IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| CHARLIE HAYES, ) | |
| ) | Case No. 4:08CV00037 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | By: Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending Plaintiff's Motion for Summary Judgment be granted and the case be remanded to the Commissioner of Social Security ("Commissioner") for further proceedings at the final level of sequential evaluation. The Commissioner filed objections to the Magistrate's Report and Recommendation. I have reviewed the Magistrate Judge's recommendation, Defendant's objections, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I will **REJECT** the Magistrate's Report and Recommendation and **GRANT** the Defendant's Motion for Summary Judgment.

**I.     PROCEDURAL HISTORY**

On April 14, 2006, Charlie Hayes filed an application for disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act") (42 U.S.C. §§ 401-433,1381-1383f) alleging disability beginning April 9, 2003.[1] (R. 9, 11.) In a decision issued on January 25, 2008, an Administrative Law Judge ("ALJ") determined that

---
[1] Plaintiff originally alleged a disability onset date of November 8, 2002. (R. 9.) Plaintiff subsequently amended the onset date to reflect the date he stopped receiving unemployment benefits, April 9, 2003. (Id.)

1

Plaintiff had severe impairments including gout, high blood pressure, asthma, and bilateral hand impairment. (R. 11.) However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (R. 12.) The ALJ determined Plaintiff's residual functional capacity ("RFC") permitted him to perform light work involving standing and walking for four to six hours with frequent breaks and sitting for four to six hours with regular breaks. (Id.) Relying on testimony from the vocational expert ("VE"), the ALJ concluded Plaintiff could perform a significant number of jobs in the national economy. (R. 18-19.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 26, 2008. (R. 1-4.) The case then went before a federal Magistrate Judge to rule on the parties' cross-motions for summary judgment. On August 5, 2009, the Honorable B. Waugh Crigler, United States Magistrate Judge, recommended that I grant the Plaintiff's Motion for Summary Judgment and remand the case to the Commissioner for further proceedings at the final level of the sequential evaluation. (Report and Recommendation at 5-6.)

## II.     STATEMENT OF FACTS

Plaintiff Charlie Hayes was born on October 14, 1958 and was forty-four years old on his alleged disability onset date. (R. 33.) He has a tenth grade education and is able to read, write, and do simple math. (R. 34, 235.) Around the beginning of 1990, Plaintiff fell and injured his right hand, requiring surgery to treat the wound. (R. 171-81.) After the operation, Mr. Hayes indicated that he was doing "quite well" and sought to delay further surgeries despite some inflammation. (R.176-78.) Sometime later, additional problems developed in the hand,

2

producing swelling, pain, and weakness. (R. 42-45.) Over the course of several years, the condition gradually worsened to the point where he is no longer able to make a tight fist. (R. 43, 45, 60.) In addition, Hayes now suffers from several other ailments. Plaintiff has alleged significant dizziness and blurred vision due to uncontrolled high blood pressure; shortness of breath due to asthma and bronchitis; difficulty standing and walking due to gout; and anxiety and gastric reflux. (R. 12, 38-39, 42, 46-48.) Plaintiff has not held a job since November, 2002,[2] but he did perform occasional work on cars as late as April, 2003. (R. 123, 214.)

Plaintiff was treated by Paul S. Buckman, M.D, eleven times between April 9, 2003, and February 6, 2007. (R. 205-14, 240-41.) Plaintiff's treatments were sporadic, often involving lapses of over one year between visits, and he failed to appear for six other scheduled appointments. (R. 205-14, 240-41.) This infrequency was due, at least in part, to a lack of funds. (R. 211.) Over the course of treatment, Dr. Buckman diagnosed Mr. Hayes with hypertension, often noting Plaintiff was doing a poor job of controlling the condition and was not taking his medications as instructed. (R. 205, 207, 210.) Dr. Buckman further noted that Plaintiff suffers from right knee pain and swelling, presumably due to gout, and also anxiety. (R. 209, 211). Based on his evaluations, the doctor determined Plaintiff "[g]ives out easily" and "[c]annot last for very long." (R. 209.) Dr. Buckman concluded Plaintiff was "[u]nable to do any work . . . because of his hand" and extremely high blood pressure and "should be disabled." (R. 209, 241.) However, Dr. Buckman's records failed to include any specific restrictions caused by Plaintiff's impairments. His conclusion that Plaintiff was unable to work and gives out easily is apparently based on what Plaintiff told him and not on any clinical tests. (R. 109.)

---

[2] Between June and November of 2002, Plaintiff engaged in seasonal work at Burr Hill Plantation but missed two weeks of work due to gout. (R. 35, 123.) At the start of the following season, Plaintiff was not rehired. (R. 123.)

3

Due to the absence of medical documentation detailing Plaintiff's functional limitations, the Disability Determination Service ("DSS") requested that Dr. Gonzalo Fernandez perform consultative examinations of Mr. Hayes to assist the DSS.[3]  (R. 16.)  During the examination, Plaintiff advised Dr. Fernandez that he could walk 300 feet and stand comfortably for thirty to forty minutes.  (R. 234.)  Plaintiff also stated that he could pick up ten pounds with his left hand and four to five pounds with his right.  (Id.)  Upon physical examination, Plaintiff was able to walk and hold a normal gait, get on and off the examination table, and sit comfortably during the exam.  (R. 235.)  Dr. Fernandez found Plaintiff's motor strength was 5/5 in his left arm, left leg, and right shoulder.[4]  (R. 236.)  Plaintiff had 5-/5 strength of his right biceps, triceps, hips, quadriceps, and hamstrings.  (Id.)  He also exhibited 5-/5 grip strength in his right hand and 5/5 in his left.  (Id.)  Plaintiff was able to tandem walk, walk on his heel and tiptoes, and squat with mild to moderate difficulty.  (Id.)  He had full range of motion of his neck, shoulders, elbows, forearms, back, knees, ankles, and wrists.  (Id.)  The flexion of his left and right knees was also essentially normal.  (R. 236.)  Dr. Fernandez opined Plaintiff should be able to stand and walk for four hours, possibly six hours, with no assistive device but frequent breaks, and sit four to six hours with regular breaks.  (R. 237.)  He further stated Plaintiff could frequently carry ten pounds, perhaps twenty pounds occasionally to frequently, limited by his right hand weakness.  (Id.)  Lastly, Dr. Fernandez found Plaintiff had postural limitations on bending, stooping, and crouching.  (Id.)

---

[3] Plaintiff's brief erroneously characterizes Dr. Fernandez as a non-examining consultant.  (Pl.'s Br. Supp. Mot. Summ. J. 11.)  However, the record makes it clear that Dr. Fernandez conducted an examination of Plaintiff.  (R. 233-37.)

[4] A score of 5/5 indicates normal muscle strength.  A score of 5-/5 indicates that the muscle has less strength than would merit a 5/5 but not enough of a deficiency to bump it down to 4/5 (weakness against resistance).

4

Included as part of Dr. Fernandez's consultative examination report were x-rays of Plaintiff's right hand and knee taken on June 21, 2006. (R. 238.) The x-rays showed a small calcific density on Plaintiff's right knee, but there was no fracture, dislocation, soft tissue swelling, or focal bony lesion. (Id.) The osseous structures of Plaintiff's right hand and joint spaces were within normal limits except for a deformity of the second metacarpal and narrowing of the second MCP joint. (Id.)

Based on all of the medical evidence available, including Dr. Fernandez's opinion, the DSS determined that Plaintiff was not disabled on July 17, 2006. (R. 70.) The decision was upheld upon reconsideration on November 2, 2006. (R. 77.)

On January 25, 2008, the ALJ found Plaintiff had not been under any type of disability within the meaning of the Act from the amended onset date of Plaintiff's alleged disability through the date of his decision. (R. 19.) Adopting Dr. Fernandez's evaluation, the ALJ concluded Plaintiff had the residual functional capacity to perform light work that involved standing and walking for four to six hours without an assistive device but with frequent breaks, and sitting four to six hours with regular breaks. (R. 12-13.) The ALJ further concluded Plaintiff was able to frequently and occasionally carry ten to twenty pounds, limited by right arm and hand weakness, and his postural limitations include bending stooping, and crouching. (R. 12.) Although the ALJ found Plaintiff was precluded from performing his past relevant work,[5] other jobs exist in significant numbers in the national economy that Plaintiff can perform.[6] (R. 18-19.)

---

[5] Plaintiff's past relevant work includes jobs as a groundskeeper, material handler, pipe layer for commercial plumbing, laborer, and sewing machine mechanic. (R. 18, 57-58.)

[6] The ALJ adopted the testimony of the VE indicating Plaintiff would be able to perform occupations at the unskilled and entry level of sedentary work such as cashier, non-emergency dispatcher, and security monitor. (R.

5

### III.     STANDARD OF REVIEW

Congress has limited judicial review of decisions by the Social Security Commissioner.  I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard.  42 U.S.C. § 405(g); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant.  20 C.F.R. §§ 404.1527-404.1545.  The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence.  20 C.F.R. §§ 404.1527, 416.927.  If the ALJ's resolution of conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision.  Laws, 368 F.2d at 642.

### IV.     DISCUSSION

In a brief filed in support of his Motion for Summary Judgment, Plaintiff argues that the ALJ did not give proper weight to the opinion of Dr. Buckman, Plaintiff's sole treating physician.  (Pl.'s Br. Supp. Mot. Summ. J. 10-11.)  Plaintiff also contends that the ALJ erred by affording controlling weight to the opinion of Dr. Fernandez.  (Id. at 11.)  The Magistrate Judge

---

19, 62.)

recommends that this Court grant the Plaintiff's Motion for Summary Judgment and remand the case to the Commissioner for further proceedings at the final level of the sequential evaluation. (Report and Recommendation at 1, 5-6.) The Commissioner objects to the Magistrate's recommendation, arguing (1) the Magistrate Judge misconstrued the ALJ's reasons for giving minimal weight to Dr. Buckman's opinion; (2) Magistrate Judge Crigler re-weighed the evidence in contravention of the Act and the law of this Circuit; (3) the Magistrate Judge overlooked substantial evidence supporting the ALJ's decision; and (4) remanding the case would not lead to a different result. (Def.'s Obj. Report and Recommendation 1-4.)

As the standard of review requires, I am precluded from judging the evidence in this case as a finder of fact. Instead, I must review the record before me to determine whether substantial evidence supports the decision of the Commissioner and whether the Commissioner applied the proper legal standard. For the reasons given here, I find that the Commissioner had substantial evidence to conclude Plaintiff could perform other work in the national economy and was not disabled under the Act. Furthermore, I find that the Commissioner did not err in giving only minimal weight to the opinion of Dr. Buckman. I conclude that there is no legal basis to remand this case to the Commissioner for further consideration.

### A. The ALJ had good reason to give only minimal weight to Dr. Buckman's opinion

The parties' biggest point of contention is the weight due to Dr. Buckman's opinion. The Magistrate Judge's Report and Recommendation asserts that the ALJ gave Dr. Buckman's opinion minimal weight based largely on the fact that Plaintiff was non-compliant with his prescribed medication and was not seen on a regular basis by Dr. Buckman. (Report and

Recommendation at 5.) Since this infrequency and non-compliance was due at least in part to Plaintiff's lack of financial means, Magistrate Judge Crigler found that the ALJ's decision prejudiced Plaintiff based on his limited resources, thereby thwarting the purpose of the Social Security Act. (Id.) Although the Report and Recommendation is partially correct as to the basis for giving Dr. Buckman's opinion minimal weight, the Magistrate Judge appears to have overlooked the ALJ's clear indication that Dr. Buckman's opinion should *also* receive minimal weight "due to the failure of his notes and records to include limitations and restrictions that the claimant experienced from his impairments." In disregarding this second rationale, the Magistrate failed to appreciate the more forceful of the two grounds for affording Dr. Buckman's opinion minimal weight. I conclude that, based on this second basis, the ALJ was correct in giving Dr. Buckman's opinion minimal weight, and remand would not result in any change in the Commissioner's evaluation.

At the fourth step of determining whether a claimant is disabled under the Act, the ALJ must determine the claimant's RFC and whether it permits him to perform the requirements of his past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e)-(f). Under the applicable regulations, the Commissioner generally gives "more weight to opinions from [] treating sources" and will give such an opinion "controlling weight" where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). As a practical matter, however, the Commissioner cannot give controlling weight to the opinion of a treating physician when such an opinion has not been provided. If the record is insufficient to allow the Commissioner to make an informed decision, the Commissioner has an affirmative duty to develop the case record on behalf of the Social Security Administration, including, if necessary,

8

by arranging for a consultative examination. See Sailing v. Bowen, 641 F. Supp. 1046, 1053-54 (W.D. Va. 1986); 20 C.F.R. 404.1545(a)(3). In such an instance, the ALJ would have to determine how much weight to give to the opinion of a consultative examiner vis-à-vis a treating physician based on a host of factors.[7]

In the immediate case, Dr. Buckman did not provide an opinion regarding the restrictions or functional limitations caused by Plaintiff's impairments. In fact, it appears the Social Security Administration's main reason for seeking Dr. Fernandez's consultative examination was because Plaintiff's treating physician had not offered any opinion upon which the ALJ could make the RFC determination. The only opinion Dr. Buckman did provide—that Plaintiff is "unable to do any work . . . because of his hand" and extremely high blood pressure and "should be disabled"—cannot be given *any* special significance, much less controlling weight, because it provides a legal conclusion expressly reserved for the Commissioner. See 404.1527(e)(1), (3); 416.927(e)(1), (3). Therefore, the ALJ was correct in giving only minimal weight to Dr. Buckman's opinion.[8] Likewise, it appears that remanding this case for re-evaluation of the weight due to Dr. Buckman's opinions would be futile. Given that Dr. Buckman has only proffered legal conclusions reserved for the Commissioner, and has not offered any opinions regarding Plaintiff's functional limitations, remand would almost certainly not result in Dr. Buckman's opinion receiving additional weight.

---

[7] In evaluating and weighing medical opinions, the Commissioner must consider "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)).

[8] Since the ALJ had a valid legal ground for affording Dr. Buckman's opinion only minimal weight, I will not address the question of whether infrequency of visits and inability to afford to comply with a doctor's orders, standing alone, is legally sufficient to preclude a physician's opinion from receiving controlling weight. Nor will I address Defendant's contention that Plaintiff could afford additional treatments and medications. (Def.'s Obj. Report and Recommendation 1-4.)

9

### B. The Administrative Law Judge had substantial evidence to find Plaintiff was not disabled

There is substantial evidence in the record to support the ALJ's determination that Plaintiff is not disabled within the meaning of the Act. As stated previously, Congress limited the scope of this Court's review of the Commissioner's final decision to determining if it is supported by substantial evidence only. 42 U.S.C. §§ 405(g), 1383(c)(3). This Circuit has consistently held that it is the duty of the ALJ reviewing the case, and not the responsibility of the federal courts, to make findings of fact and to resolve conflicts in the evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) (providing that it is not the role of the court to try the case *de novo* when reviewing disability determinations). The ALJ's credibility determinations are entitled to great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). In reviewing the record for substantial evidence, the court must not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

As described previously, the record contains ample evidence supporting the Commissioner's decision.[9] The VE concluded, and the ALJ agreed, that Plaintiff could perform a significant number of jobs existing in the national economy. Plaintiff stated that he goes outside every day, fishes occasionally, and goes shopping about once a month. He can walk about 300 feet and stand comfortably for thirty to forty minutes. He can prepare simple meals, clean, dress, and take care of himself. He is able to perform ordinary household chores and tasks. Plaintiff can walk for some distance, hold a normal gait, and sit comfortably. He has normal muscle strength in his left arm, left hand, left leg, and right shoulder. He also has close

---

[9] See supra Part II.

10

Case 4:08-cv-00037-JLK-BWC   Document 20   Filed 08/31/09   Page 10 of 11   Pageid#: 70

to normal muscle strength in his right hand. Mr. Hayes has a full range of motion in nearly all of his extremities and joints, and his x-rays were essentially normal. Dr. Fernandez determined that Plaintiff should be able to stand and walk for four to six hours with no assistive device but frequent breaks, and sit for four to six hours with regular breaks. He further found that Plaintiff could carry ten to twenty pounds occasionally to frequently with some limitations. There were no medical records contradicting Dr. Fernandez's assessment of Plaintiff's RFC. Based on all of this information, the ALJ had substantial evidence to rule that Mr. Hayes was not disabled within the meaning of the Act. As intended by Congress, the ALJ weighed the facts and made a decision, and it is not my position to second-guess that determination.

## V. CONCLUSION

For the reasons stated above, I will **REJECT** the Magistrate Judge's Report and Recommendation and **SUSTAIN** the Defendant's objections. I will **GRANT** the Defendant's Motion for Summary Judgment and this case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 31st day of August, 2009.

s/Jackson L. Kiser
Senior United States District Judge
